# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **THERESE SIMS ERVIN,** | } |
| Plaintiff, | } |
| v. | } Case No.: 2:15-CV-02020-MHH |
| **NANCY A. BERRYHILL,** **Commissioner of the** **Social Security Administration,** | } |
| Defendant. | } |

## **MEMORANDUM OPINION**

Pursuant to 42 U.S.C. § 405(g) and § 1383(c), plaintiff Therese Sims Ervin seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied her claims for a period of disability, disability insurance benefits, and supplemental security income. For the reasons stated below, the Court affirms the Commissioner's decision.[1]

## I. PROCEDURAL HISTORY

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. (*See* https://www.ssa.gov/agency/commissioner.html). Therefore, the Court asks the Clerk to please substitute Ms. Berryhill for Carolyn W. Colvin as the defendant in this action. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. Later opinions should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded.").

Ms. Ervin applied for a period of disability, disability insurance benefits, and supplemental security income on July 29, 2010. (Doc. 7-6, pp. 10-20). Ms. Ervin alleges that her disability began on July 20, 2010. (Doc. 7-5, p. 18).[2] The Commissioner initially denied Ms. Ervin's claims on November 8, 2010. (Doc. 7-5, pp. 2-11). Ms. Ervin requested a hearing before an Administrative Law Judge (ALJ). (Doc. 7-5, p. 14). The ALJ issued an unfavorable decision on August 31, 2012. (Doc. 7-4, pp. 16-33). Ms. Ervin asked the Appeals Council to review the ALJ's decision. (*See* Doc. 7-4, p. 39). On September 26, 2013, the Appeals Council completed its review and remanded the matter to the ALJ. (Doc. 7-4, pp. 39-41).

The ALJ conducted a new hearing and issued a new decision on September 8, 2014, once again finding that Ms. Ervin is not disabled. (Doc. 7-3, pp. 19-44). Ms. Ervin asked the Appeals Council to review the ALJ's new opinion. (Doc. 7-3, p. 17). On October 6, 2015, the Appeals Council declined her request (Doc. 7-3, pp. 2-5), making the Commissioner's decision final and a proper candidate for this Court's judicial review. *See* 42 U.S.C. § 405(g) and § 1383(c).

## II. STANDARD OF REVIEW

---

[2] Ms. Ervin originally alleged that her disability began on September 10, 2003. (Doc. 7-6, pp. 10, 17). On May 21, 2011, Ms. Ervin amended her alleged onset to date to July 20, 2010. (Doc. 7-5, p. 18).

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether the record contains substantial evidence that supports the ALJ's findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted). If substantial evidence supports the ALJ's decision, then the Court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis,

3

then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III. SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that she is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In his September 8, 2014 decision, the ALJ found that Ms. Ervin has not engaged in substantial gainful activity since July 20, 2010, the alleged onset date. (Doc. 7-3, p. 24).[3] The ALJ determined that Ms. Ervin suffers from the following severe impairments: degenerative disc disorder with facet arthrosis;

---

[3] The ALJ found that Ms. Ervin's amended alleged onset date of July 20, 2010 "precludes her entitlement to a period of disability and disability insurance benefits under Title II of the Social Security Act because [she] would not be eligible for insured status on the date of onset as her date last insured was December 31, 2003." (Doc. 7-3, p. 22). Therefore, the ALJ dismissed Ms. Ervin's claim for a period of disability and disability insurance benefits. (Doc. 7-3, p. 22). The ALJ's decision concerns only Ms. Ervin's application for supplemental security income. (Doc. 7-3, p. 22).

4

polyneuropathy; chronic pain syndrome; bilateral foot impairments; diabetes mellitus; thyroid impairment; obesity; affective mood disorder; pain disorder; borderline personality disorder; and an opioid dependence with a remote history of polysubstance abuse. (Doc. 7-3, p. 25). The ALJ also found that Ms. Ervin has the following non-severe impairments: obstructive sleep apnea; mild respiratory disease; hypertension; migraines; knee strain; prolapsed uterus; fibromyalgia; allergies; dermatitis; and irritable bowel syndrome. (Doc. 7-3, pp. 25-26). Based on a review of the medical evidence, the ALJ concluded that Ms. Ervin does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 7-3, pp. 26-27).

In light of Ms. Ervin's impairments, the ALJ evaluated Ms. Ervin's residual functional capacity or RFC. The ALJ determined that Ms. Ervin has the RFC to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Ms. Ervin] can never climb ladders, ropes or scaffolds; can occasionally climb stairs and ramps; can occasionally stoop, kneel, crouch, crawl and engage in activities requiring balance; should avoid concentrated exposure to extreme temperatures and humidity; should avoid concentrated exposure to operational controls of moving machinery and unprotected heights; limited to simple, routine and repetitive tasks; limited to work in a low-stress environment defined as requiring only occasional decision-making and only occasional changes in work setting; and limited to only occasional interaction with the public and co-workers.

(Doc. 7-3, p. 30).

Based on this RFC, the ALJ concluded that Ms. Ervin is unable to perform her past relevant work as an administrative officer. (Doc. 7-3, p. 42). Relying on testimony from a vocational expert, the ALJ found that jobs exist in the national economy that Ms. Ervin can perform, including photocopy machine operator, general office helper, and garment folder. (Doc. 7-3, p. 43). Accordingly, the ALJ determined that Ms. Ervin has not been under a disability within the meaning of the Social Security Act. (Doc. 7-3, p. 44).

## IV. ANALYSIS

Ms. Ervin argues that she is entitled to relief from the ALJ's decision because the ALJ failed to properly evaluate the opinion of Dr. Ronald Moon, Ms. Ervin's treating physician, and because the ALJ failed to properly evaluate or explain the weight the ALJ accorded to the opinion of consultative examiner, Dr. Dan Lowery, Ph.D. The Court examines each issue in turn.

### A. Substantial Evidence Supports the ALJ's Decision to Give Dr. Moon's Opinion Little Weight.

An ALJ must give the opinion of a treating physician like Dr. Moon "substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the]

6

treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1240-41*; see also Crawford*, 363 F.3d at 1159 (noting a treating physician's report may be discounted if it is wholly conclusory or not supported by objective medical evidence); *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (good cause exists when facts in the physician's own records contradict the physician's opinion). "The ALJ must clearly articulate the reasons for giving less weight to a treating physician's opinion, and the failure to do so constitutes error." *Gaskin v. Comm'r. of Soc. Sec.*, 533 Fed. Appx. 929, 931 (11th Cir. 2013) (citing *Lewis v. Callahan*, 125 F. 2d 1436, 1440 (11th Cir. 1997)).

In support of her application for disability benefits, Ms. Ervin relies on physical capacities evaluations and clinical assessment of pain and fatigue forms that Dr. Moon completed on January 18, 2011 and January 15, 2014 . (Doc. 7-9, pp. 91-95; Doc. 7-19, pp. 39-43). In the January 18, 2011 physical capacities evaluation, Dr. Moon opined that Ms. Ervin can lift and/or carry 20 pounds occasionally or less frequently and sit and stand for less than a total of one hour in an eight-hour work day. (Doc. 7-9, p. 91). Dr. Moon also concluded that Ms. Ervin occasionally can push or pull arm and leg controls; climb stairs; balance; grasp, twist, and handle; bend; stoop; and reach. (Doc. 7-9, p. 91). Dr. Moon found that Ms. Ervin can drive, and she frequently can perform fine manipulation, but she cannot work around hazardous machinery. (Doc. 7-9, p. 91).

In clinical assessment of pain and fatigue forms dated January 18, 2011, Dr. Moon explained that Ms. Ervin's pain and fatigue distract her from adequate performance of daily activities or work and that physical activity increases her pain and fatigue "to such an extent that bedrest and/or medication is necessary." (Doc. 7-9, pp. 92, 94). Dr. Moon determined that Ms. Ervin's medication causes some side effects "but not to such a degree as to create serious problems in most instances." (Doc. 7-9, pp. 93, 95). Dr. Moon noted that Ms. Ervin has an underlying medical condition consistent with the pain and fatigue that she experiences. (Doc. 7-9, pp. 93, 95). Dr. Moon did not identify that medical condition, but the pain assessment form does not request that information.

On January 15, 2014, Dr. Moon completed another physical capacities evaluation. (Doc. 7-19, p. 39). In that evaluation, Dr. Moon opined that Ms. Ervin can lift and/or carry 10 pounds occasionally or less frequently and that Ms. Ervin can sit for four hours in an eight-hour day and stand and walk for three hours in an eight-hour day. (Doc. 7-19, p. 39). Dr. Moon concluded that Ms. Ervin frequently can push and pull leg and arm controls; grasp, twist, and handle; and perform fine manipulation. (Doc. 7-19, p. 39). Dr. Moon determined that Ms. Ervin occasionally can climb stairs; balance; bend with support; stoop; and reach. (Doc. 7-19, p. 39). Dr. Moon stated that Ms. Ervin should not work around hazardous

machinery, dust, allergens, or fumes, but Ms. Ervin may operate motor vehicles. (Doc. 7-19, p. 39).

In clinical assessment of pain and fatigue forms that Dr. Moon completed on January 15, 2014, he found that Ms. Ervin's pain and fatigue distract her from adequate performance of daily activities and work and that her medication causes some side effects "but not to such a degree as to create serious problems in most instances." (Doc. 7-19, pp. 40-43). Dr. Moon stated that physical activity would increase Ms. Ervin's pain "to such an extent that bedrest and/or medication is necessary" (Doc. 7-19, p. 40) and that physical activity would greatly increase Ms. Ervin's fatigue and weakness resulting in "total abandonment of tasks." (Doc. 7-19, p. 42). Dr. Moon noted that Ms. Ervin has an underlying medical condition consistent with the pain and fatigue that she experiences. (Doc. 7-19, pp. 41, 43). Dr. Moon did not identify the medical condition, but again, the pain assessment form does not request that information.

The ALJ assigned little weight to Dr. Moon's opinions about Ms. Ervin's physical capacity and pain because the ALJ found that Dr. Moon's opinions are "not consistent with the evidence as a whole." (R. 40).[4] Substantial evidence in the record supports the weight that the ALJ assigned to Dr. Moon's opinions.

---

[4] The ALJ gave "some weight" to Dr. Moon's opinion that Ms. Ervin does not need an ambulatory aid. (Doc. 7-3, p. 41; *see* Doc. 7-9, p. 91). Ms. Ervin does not challenge the weight that the ALJ assigned to this opinion. (*See* Doc. 9, pp. 6-7).

Dr. Moon has treated Ms. Ervin for pain since 2008. (*See e.g.*, Doc. 7-14, p. 6). The record contains nearly 50 treatment notes from Ms. Ervin's visits with Dr. Moon between March 9, 2010 and January 14, 2014. Some information in the treatment notes supports Dr. Moon's opinions. For example, during fall and winter months, Ms. Ervin complained that the colder weather increased her pain. (Doc. 7-11, pp. 12, 14, 35, 37; Doc. 7-13, p. 50; Doc. 7-20, p. 25). Rain also aggravated her pain at times. (Doc. 7-14, p. 26; Doc. 7-17, p. 14). On a handful of occasions, Ms. Ervin reported increased pain with medication changes or increased activity. (Doc. 7-9, p. 3; Doc. 7-13, p. 41; Doc. 7-14, p. 41).

Much of the information in the treatment notes indicates that medication controlled Ms. Ervin's pain. For a period of several months in 2011 and 2012 when Ms. Ervin did not attend prescribed physical therapy sessions, she told Dr. Moon that her pain levels increased (Doc. 7-11, pp. 34, 53; Doc. 7-18, p. 16), but on one occasion when Ms. Ervin reported that missed therapy left her pain less controlled, Ms. Ervin stated that her pain was tolerable with medication, and she was able to do most of her daily activities (Doc. 7-18, p. 25).[5] In addition, during an examination on January 14, 2014, Dr. Moon stated that Ms. Ervin was unable to stand for prolonged periods because of stabbing, sharp pains in her feet (Doc. 7-20,

---

[5] The record does not suggest that Ms. Ervin abandoned physical therapy. Dr. Moon's treatment notes state that Ms. Ervin was "getting worse since therapy was denied." (Doc. 7-11, p. 34; *see also* Doc. 7-18, p. 25).

p. 4), but in the same treatment note, Dr. Moon stated that Ms. Ervin's medication helped make her pain more tolerable and allowed her to be more functional. (Doc. 7-20, p. 7). In fact, the majority of Dr. Moon's treatment notes indicate that Ms. Ervin was stable on medication, that medication eased her pain, and that she was able to complete daily activities. (Doc. 7-9, pp. 9, 13, 17, 22, 27; Doc. 7-11, p. 22; Doc. 7-12, pp. 31, 43, 45, 55; Doc. 7-13, pp. 3, 6, 17, 27, 31; Doc. 7-14, pp. 18, 29, 49, 52; Doc. 7-16, pp. 14, 24, 33, 42, 51; Doc. 7-17, pp. 5, 23, 41, 50, 59; Doc. 7-18, pp. 16, 25, 34; Doc. 7-20, pp. 25, 34). These statements are inconsistent with Dr. Moon's opinion that Ms. Ervin cannot work a full eight-hour work day and that physical activity would increase Ms. Ervin's pain "to such an extent that bedrest" is necessary. (Doc. 7-9, pp. 92; Doc. 7-19, p. 40).

Ms. Ervin argues Dr. Moon's treatment notes from five appointments between January 2012 and May 2012 reflect "significant limitations in the back, legs, and feet with pain noted to be 'whole body pain.'" (Doc. 9, p. 7) (citing Doc. 7-14, pp. 6-60). These records demonstrate that Ms. Ervin complained of "whole body" pain (Doc. 7-14, pp. 6, 15, 18, 28, 51, 52) and Dr. Moon diagnosed somatic dysfunction and myofascial pain. (Doc. 7-14, pp. 9, 21, 32, 44, 55). Although Dr. Moon noted some limited range of motion in Ms. Ervin's spine, ribs, and lower extremities, Dr. Moon did not identify the degree of limitation, and often, Dr. Moon found that Ms. Ervin's bones, joints, muscles, and tendons appeared normal,

11

were stable, and had normal strength and tone. (Doc. 7-14, pp. 7, 19, 30, 42, 53). In addition, in treatment notes from visits on January 17, 2012 and March 13, 2012, Dr. Moon noted that Ms. Ervin reported increased pain and less pain relief from her medicine, but she acknowledged that she was able to do most daily activity. (Doc. 7-14, pp. 29, 49). Although these records contain some objective findings of limited range of motion, on the whole, these records are inconsistent with Dr. Moon's physical capacities evaluations of Ms. Ervin.

The Court finds that substantial evidence supports the ALJ's decision to give Dr. Moon's opinion little weight. *Whitton v. Comm'r of Soc. Sec. Admin.*, 643 Fed. Appx. 842, 846 (11th Cir. 2016) (finding that the ALJ had good cause to reject the treating physician's opinion because of inconsistencies between the opinion and the treating physician's notes). Therefore, based on the applicable legal standard (*see* page 3), the Court must accept the weight that the ALJ assigned to Dr. Moon's assessments, even though there is some evidence in the record that supports those assessments.

**B.     The ALJ Did Not Err in Failing to Assign Weight to Dr. Lowery's Psychological Evaluation.**

On October 13, 2010, state agency examiner Dr. Dan Lowery performed a mental status examination on Ms. Ervin. (Doc. 7-9, p. 72). During the examination, Ms. Ervin "walked without a gross motor impairment," and she "did not demonstrate any overt pain behaviors." (Doc. 7-9, p. 73). Ms. Ervin "walked

slowly and hunched over," and she had "difficulty standing from a seated position." (Doc. 7-9, p. 74). Dr. Lowery explained that Ms. Ervin "was attentive and cooperative throughout the interview," but she "made below average eye contact, did not initiate conversation, and demonstrated below average interpersonal skills." (Doc. 7-9, p. 73). Ms. Ervin "was mostly depressed during the interview," and her "affect was flat." (Doc. 7-9, pp. 73-74). Ms. Ervin "was unable to focus well and took a long time to answer questions." (Doc. 7-9, p. 74). Ms. Ervin "appeared mildly confused at times." (Doc. 7-9, p. 74).

Ms. Ervin had normal speech rate, rhythm, and volume, and her articulation was clear. (Doc. 7-9, p. 74). Ms. Ervin was alert and oriented to person, place, and time. (Doc. 7-9, p. 74). Ms. Ervin's concentration and attention were mildly impaired; her immediate memory was impaired; and her delayed recall was average. (Doc. 7-9, p. 74). Ms. Ervin's "fund of information was excellent," and her thinking "was mostly concrete." (Doc. 7-9, p. 74). Ms. Ervin's "thought process appeared logical, coherent, and goal-directed," and "[t]here was no evidence of tangential thinking, loose associations, or flight of ideas." (Doc. 7-9, p. 74). Ms. Ervin reported feeling guilty, worthless, and hopeless. At times, she had experienced suicidal thoughts, but she denied "obsessions, compulsions, hallucinations, delusions, or phobias." (Doc. 7-9, p. 74). Ms. Ervin "appeared to

have below average insight related to her condition and future," and her judgment was average. (Doc. 7-9, p. 74).

Dr. Lowery diagnosed pain disorder due to psychological and general medical conditions and moderate major depressive order. (Doc. 7-9, p. 75). Dr. Lowery stated that Ms. Ervin's depression might account for "her severe immediate recall impairment," but "a cognitive disorder of unknown etiology is also possible." (Doc. 7-9, p. 75). Dr. Lowery recommended counseling to improve Ms. Ervin's mood. (Doc. 7-9, p. 75).

In his decision, the ALJ provided record citations to Dr. Lowery's October 2010 evaluation and discussed a number of Dr. Lowery's findings, but the ALJ did not mention Dr. Lowery by name. For example, the ALJ stated that Ms. Ervin "demonstrated excellent fund of information during 2010 formal psychological testing." (Doc. 7-3, p. 26; *see also* Doc. 7-3, pp. 28, 37; *compare* Doc. 7-9, p. 74). Referring to an October 2010 evaluation, the ALJ noted that Ms. Ervin "appeared to have some difficulty rising from a seated position . . . and walked in a hunched over posture" but "ambulated without gross motor impairment." (Doc. 7-3, p. 34; *compare* Doc. 7-9, p. 75). Without naming Dr. Lowery, the ALJ acknowledged that Ms. Ervin struggled with depression and cited findings regarding Ms. Ervin's mild impairment in attention and concentration and impaired immediate memory. (Doc. 7-3, p. 28; *see also* Doc. 7-3, p. 38; *compare* Doc. 7-9, pp. 74-75). The ALJ

explained that during a 2010 examination, Ms. Ervin stated that "the reason she did not do chores was that she 'did not have to' because she lived with her parents." (Doc. 7-3, p. 37; *compare* Doc. 7-9, p. 73). Citing Dr. Lowery's report, the ALJ also noted that Ms. Ervin demonstrated "memory impairment and below average interpersonal skills." (Doc. 7-3, p. 37; *compare* Doc. 7-9, pp. 73-74).[6] Though he discussed them in his decision, the ALJ did not assign a specific weight to Dr. Lowery's findings when he evaluated the opinion evidence in the record. (*Compare* Doc. 7-3, pp. 26, 28, 34, 37-38 *with* Doc. 7-3, pp. 39-42).

When he reviewed the medical opinion evidence, the ALJ correctly stated that the record contained a psychological evaluation but that "the examiner offered no formal opinion as to the claimant's mental capacity for work." (Doc. 7-3, p. 41). That is so; Dr. Lowery's report does not "reflect judgments about . . . what [Ms. Ervin] can still do despite" her impairments. *See* 20 C.F.R. § 416.927(a). Dr. Lowery offered diagnoses, but he did not explain how those diagnoses impact Ms. Ervin's ability to work. Therefore, Dr. Lowery's assessment does not help Ms. Ervin establish that she is disabled. *See Wind v. Barnhart*, 133 Fed. Appx. 684, 690 (11th Cir. 2005) ("[A] diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the

---

[6] The ALJ referred to a meeting that Ms. Ervin had with "consulting psychologist, Dr. Lowell." (Doc. 7-3, p. 37). Based on the record citation and the similarity between the names, this seems to be a reference to Ms. Ervin's visit with Dr. Lowery.

claimant must show the effect of the impairment on her ability to work.") (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)); *Cherkaoui v. Comm'r of Soc. Sec.*, 678 Fed. Appx. 902, 904 (11th Cir. 2017) ("The claimant bears the burden of establishing the existence of a disability.") (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003)).

Assuming without deciding that the ALJ erred in failing to explicitly state the weight he assigned to Dr. Lowery's report, the error is harmless. Dr. Lowery examined Ms. Ervin once, and to the extent that Dr. Lowery's report constitutes a medical opinion, the opinion is not entitled to deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (citing *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986)); *see also Eyre v. Comm'r, Soc. Sec. Admin.*, 586 Fed. Appx. 521, 523 (11th Cir. 2014) ("The ALJ owes no deference to the opinion of a physician who conducted a single examination. . . ."). Moreover, the ALJ accounted for Dr. Lowery's notes regarding Ms. Ervin's impairment of attention and concentration by limiting her in her RFC to simple, routine tasks in a low-stress environment. (Doc. 7-3, pp. 29-30).

## V. CONCLUSION

For the reasons discussed above, the Court finds that the ALJ's decision is supported by substantial evidence, and the ALJ applied proper legal standards. The Court will not reweigh the evidence or substitute its judgment for that of the

16

Commissioner.  Accordingly, the Court affirms the Commissioner's decision.  The Court will enter a separate final judgment consistent with this memorandum opinion.

    **DONE** and **ORDERED** this September 18, 2017.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE